1   ROBIN D. BALL (State Bar No. 159686)
    **NORTON ROSE FULBRIGHT US LLP**
2   555 South Flower Street, Forty-First Floor
    Los Angeles, California 90071
3   Telephone:    (213) 892-9200
    Facsimile:    (213) 892-9494
4   Email:        robin.ball@nortonrosefulbright.com

5   WILLIAM J. LEONE (*pro hac vice* pending)
    SETH M. KRUGLAK (*pro hac vice* pending)
6   **NORTON ROSE FULBRIGHT US LLP**
    1301 Avenue of the Americas
7   New York, New York 10019
    Telephone:    (212) 318-3000
8   Facsimile:    (212) 318-3400
    Email:        william.leone@nortonrosefulbright.com
9                 seth.kruglak@nortonrosefulbright.com

10  Attorneys for Plaintiff
    Donald Keith Ellison

11

12              IN THE UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15

16  DONALD KEITH ELLISON,                    Case No.

17              Plaintiff,                   **PLAINTIFF DONALD KEITH
                                             ELLISON'S NOTICE OF MOTION AND
18      v.                                   MOTION TO RETURN PROPERTY
                                             PURSUANT TO FEDERAL RULE OF
19  UNITED STATES OF AMERICA,                CRIMINAL PROCEDURE 41(g);
                                             MEMORANDUM OF POINTS AND
20              Defendant.                   AUTHORITIES IN SUPPORT
                                             THEREOF

21                                           (Misc. Matter Pursuant to Crim. L.R. 41-1)

22

23                                           Date:   September 11, 2019
                                             Time:   2:00 p.m.
24                                           Ctrm.:  2

25

26

27

28

**FILED**

JUN 12 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

CV 19-3341 LB

DOCUMENT PREPARED
ON RECYCLED PAPER

ORIGINAL

FAXED

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................... 4

III.    LEGAL STANDARD .............................................................................................. 6

IV.    ARGUMENT ............................................................................................................. 7

        A.     The Court's Exercise of its Equitable Jurisdiction is Warranted Here .................. 7

              1.    The Government has displayed a callous disregard for Ellison's constitutional rights .......................................................................... 7

              2.    Ellison has an individual interest in the property, and will suffer irreparable harm without its return .............................................. 9

              3.    Ellison lacks an adequate remedy at law ................................................... 10

        B.     Under Rule 41(g), Ellison is entitled to the return of his property ...................... 13

              1.    Because the seizure exceeds the scope of the warrant, it violates the Fourth Amendment ....................................................................... 14

              2.    Because there is no connection between the seized property and any criminal activity, the seizure violates Ellison's constitutional rights ........ 16

              3.    Maintaining the Warrant Materials under seal further infringes Ellison's constitutional rights ................................................................. 17

V.     PRAYER FOR RELIEF .......................................................................................... 21

DOCUMENT PREPARED
ON RECYCLED PAPER

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Account Servs. Corp. v. United States*,
    No. 09-CV-1495-JM (RBB), 2009 WL 2755649 (S.D. Cal. Aug. 27, 2009) ...........................10

*Al-Kidd v. Ashcroft*,
    598 F.3d 1129 (9th Cir. 2010)...........................................................................................15

*Camacho v. United States*,
    No. 12–cv–956–CAB (BGS), 2013 WL 12072522 (S.D. Cal. Dec. 18, 2013) .......................12

*Celata v. United States*,
    334 F. App'x 801 (9th Cir. 2009) ...............................................................................12, 13

*Cox v. United States*,
    No. CV-07-1200-PHX-SMM, 2008 WL 477877 (D. Ariz. Feb. 19, 2008)..............................7

*Demaree v.Pederson*,
    887 F.3d 870 (9th Cir. 2018)..............................................................................................8

*DWB Holding Co. v. United States*,
    593 F. Supp. 2d 1271 (M.D. Fla. 2009) .............................................................................12

*Estate of Brown by Brown v. Lambert*,
    No. 15-cv-1583-DMS (WVG), 2017 WL 2812618 (S.D. Cal. June 27, 2017) .......................14

*In re Funds on Deposit*,
    919 F. Supp. 2d 169 (D. Mass. 2012) ..........................................................................11, 12

*Horton v. California*,
    496 U.S. 128 (1990)..........................................................................................................15

*Matter of 636 S. 66th Terrace, Kansas City, Kan.*,
    835 F. Supp. 1304 (D. Kan. 1993) ....................................................................................15

*Matter of Search of Specialty Fulfillment Ctr.*,
    No. 1:17-mc-09979-CWD, 2018 WL 785861 (D. Idaho Feb. 8, 2018)....................................8

*Naylor v. United States*,
    No. 13–cv–2481–BTM, 2013 WL 6909521 (S.D. Cal. Dec. 27, 2013) .................................10

*Omidi v. United States*,
    851 F.3d 859 (9th Cir. 2017).....................................................................................11, 12, 13

*Pac. Marine Ctr., Inc. v. Silva*,
    809 F. Supp. 2d 1266 (E.D. Cal. 2011)..............................................................................15

*In re the Premises Known and Described as 100 Sweeneydale Ave., Bayshore, N.Y.*,
    No. 14-MC-1179 (ADS), 2015 WL 3607572 (E.D.N.Y. June 6, 2015)..................................17

DOCUMENT PREPARED
ON RECYCLED PAPER

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |
| 2 | (continued) |

<b>Page</b>

*Ramsden v. United States,*
   2 F.3d 322 (9th Cir. 1993) ..................................................................7, 8, 9, 10

*In re Search of Up North Plastics, Inc.,*
   940 F. Supp. 229 (D. Minn. 1996) ..............................................................18

*In re Searches and Seizures,*
   Nos. 08-SW-0361 DAD, 08-SW-0362 DAD, 08-SW-0363 DAD, 08-SW-0364
   DAD, 2008 WL 5411772 (E.D. Cal. Dec. 19, 2008) .......................................18

*In re Search Warrants Issued August 29, 1994,*
   889 F. Supp. 296 (S.D. Ohio 1995) ...........................................................18

*In re Search Warrants Issued on April 26, 2004,*
   353 F. Supp. 2d 584 (D. Md. 2004) ...........................................................18

*In the Matter of Searches of Semtex Indus. Corp.,*
   876 F. Supp. 426 (E.D.N.Y. 1995) ............................................................18

*Societe d'Equipments Internationaux Nigeria, Ltd. v. Dolarian Capital, Inc.,*
   No. 1:15-cv-01553-DAD-SKO, 2016 WL 4191887 (E.D. Cal. August 8, 2016)...............18, 19

*United States v. $191,910.00 in U.S. Currency,*
   16 F.3d 1051 (9th Cir. 1994).................................................................3

*United States v. Marolf,*
   173 F.3d 1213 (9th Cir. 1999)................................................................3

*United States v. $12,248 U.S. Currency,*
   957 F.2d 1513 (9th Cir. 1991)...............................................................10

*United States v. $20,000 in U.S. Currency,*
   No. 18cv1779-L-BLM, 2019 WL 1793359 (S.D. Cal. Apr. 24, 2019) ..........................11, 12

*United States v. $80,180.00,*
   303 F.3d 1182 (9th Cir. 2002).................................................................3

*United States v. $493,850.00 in U.S. Currency,*
   518 F.3d 1159 (9th Cir. 2008)...............................................................16

*United States v. Comprehensive Drug Testing, Inc.,*
   621 F.3d 1162 (9th Cir. 2010)...........................................................8, 9, 15

*United States v. Contents of Accounts,*
   No. 3:10-CV-228-H, 2010 WL 2556849 (W.D. Ky. June 18, 2010) ............................19

*United States v. Ewain,*
   88 F.3d 689 (9th Cir. 1996)..................................................................14

*United States v. Gregoire,*
   638 F.3d 962 (8th Cir. 2011).................................................................17

Document Prepared
on Recycled Paper

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Harrell,*
    530 F.3d 1051 (9th Cir. 2008)..........................................................................13, 14

*United States v. Heldt,*
    668 F.2d 1238 (D.C. Cir. 1981) .................................................................................15

*United States v. Hurtado,*
    No. 09-4206 SVW (EX), 2009 WL 10671968 (C.D. Cal. Oct. 7, 2009) .................13

*United States v. Ibrahim,*
    522 F.3d 1003 (9th Cir. 2008)..................................................................................1, 6

*United States v. Mann,*
    140 F. Supp. 3d 513 (E.D.N.C. 2015).........................................................17, 19, 20

*United States v. Moya–Gomez,*
    860 F.2d 706 (7th Cir. 1988)......................................................................................19

*United States v. One 1974 Learjet 24D, Serial Number 24D-290, Mexican
    Registration XA-RMF,*
    191 F.3d 668 (6th Cir. 1999)......................................................................................17

*United States v. Sedaghaty,*
    728 F.3d 885 (9th Cir. 2013).................................................................................9, 14

*United States v. Spilotro,*
    800 F.2d 959 (9th Cir. 1986)......................................................................................14

*United States v. Tamura,*
    694 F.2d 591 (9th Cir. 1982)......................................................................................14

*United States v. Wetselaar,*
    No. 2:11-CR-00347-KJD, 2013 WL 8206582 (D. Nev. Dec. 31, 2013) .................14

*Walter v. United States,*
    447 U.S. 649 (1980).....................................................................................................14

*Watts v. Kroczynski,*
    636 F. Supp. 792 (W.D. La. 1986).............................................................................15

*Zubkis v. Lange,*
    966 F. Supp. 985 (S.D. Cal. 1997)...............................................................................8

**Rules and Statutes**

18 U.S.C. § 981.....................................................................................3, 11, 16, 17

18 U.S.C. § 982...........................................................................................................16

18 U.S.C. § 983.....................................................................................................11, 12

Document Prepared
on Recycled Paper

# TABLE OF AUTHORITIES
(continued)

Page

19 U.S.C. § 1607 ...................................................................................11

21 U.S.C. § 853 ...............................................................................11, 16

28 U.S.C. § 2461 .............................................................................11, 16

Federal Rule of Criminal Procedure Rule 41(g) ................................... *passim*

**United States Constitution**

Fourth Amendment ("U.S. Const. amend. IV")......................................... *passim*

Fifth Amendment ("U.S. Const. amend. V").................................................16

DOCUMENT PREPARED ON RECYCLED PAPER

## NOTICE OF MOTION

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Plaintiff Donald Keith Ellison ("Ellison") will, and hereby does, move the Court to order the Government of the United States of America to return Ellison's seized property pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, on September 11, 2019 at 2:00 p.m. or as soon thereafter as the matter can be heard in Courtroom 2 of the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612.

This Motion is made on the grounds that the Government has wrongfully seized Ellison's property in this District. Specifically, the Government seized funds and securities in excess of the property authorized to be seized pursuant to the seizure warrant issued out of the District of Puerto Rico in *In the Matter of the Seizure of Funds in the Charles Schwab & Co., Inc., account #9991-8933 in the name of Donald Keith Ellison ($1,000,000 USD)*, No. 19-835(M) (D.P.R.) (the "Schwab Warrant"). Though the Schwab Warrant authorized seizure of funds up to $1,000,000.00, the Government seized nearly $4.5 million in funds and securities from Ellison's account with Charles Schwab & Co, Inc. The Schwab Warrant was executed in San Francisco, California. Moreover, the Government has improperly sealed affidavits and other supporting documentation that the Government submitted as part of its application for the Schwab Warrant, preventing Ellison from understanding and challenging the basis of the Government's seizure. This Motion is based on this Notice; the attached Memorandum of Points and Authorities and Declarations of Donald Keith Ellison and William J. Leone in support thereof; and any further papers filed in connection with this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Criminal Procedure 41(g), Donald Keith Ellison ("Ellison") files this Motion to Return Property illegally seized by the Government in this District. By filing this Motion, Ellison initiates a civil action in equity. *United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008).

## I. INTRODUCTION

Ellison has not been indicted or charged with any crimes. He does not have notice of any

- 1 -

DOCUMENT PREPARED ON RECYCLED PAPER

criminal proceedings against him.  He has not received notice from the Government of any forfeitures or the initiation of any forfeiture proceedings.  However, Ellison learned from his financial advisor that all securities and funds in his brokerage account with Charles Schwab & Co. were frozen pursuant to a seizure warrant issued out of the District of Puerto Rico (the "Schwab Warrant").[1]  He has not received any notice of any kind explaining why his assets have been frozen or what he is accused of.  The Government has declined to explain its actions.  The account contained funds and securities totaling approximately $4.5 million.  Eventually, after several requests to the Government, Ellison was finally provided with a copy of the seizure warrant approximately two weeks after the seizure.  On its face, the Schwab Warrant contains an initialed notation that limits the warrant to $1 million in "Funds."  In addition, the Schwab Warrant must have something to do with business conducted by his former employer, Cobra Energy LLC ("Cobra"), in the District of Puerto Rico, as that is the only connection Ellison has ever had with the District of Puerto Rico.  The account in question, however, contains Ellison's retirement assets that he has accumulated over several decades of federal service and private employment.  He worked for Cobra for only 29 months.  That employer was only involved with any business dealings in the District of Puerto Rico for the past 18 months.  Its work there has been completed.

Despite the limitation on the face of the Schwab Warrant and the obvious difficulties in connecting the totality of Ellison's account to any activity involving the District of Puerto Rico, the Government purported to freeze and has stated an intention to liquidate the entirety of his account. Ellison seeks the return of the excess not authorized to be seized by the express terms of the warrant (the "Excess Property").[2]  He also seeks a showing of the basis, if any colorable basis exists, upon which the District of Puerto Rico has seized 100% of his financial assets based on an

---

[1] See Declaration of William J. Leone ("Leone Decl."), ¶ 2, Ex. 1 (seizure warrant issued in *In the Matter of the Seizure of Funds in the Charles Schwab & Co., Inc., account #9991-8933 in the name of Donald Keith Ellison ($1,000,000 USD)*, No. 19-835(M) (D.P.R.)) (the "Schwab Warrant").

[2] Ellison reserves the right to challenge the constitutionality of the Schwab Warrant at a later time.

DOCUMENT PREPARED ON RECYCLED PAPER

1    investigation involving only the past 18 months of his life.  Further, Ellison seeks the unsealing of

2    the affidavits and any other supporting documents submitted as part of the Government's

3    application for the warrant (the "Warrant Materials").

4        The Government has available to it several avenues through which it can pursue forfeiture

5    of assets "constituting, derived from or traceable to" an offense against the United States.  *See,*

6    *e.g.,* 18 U.S.C. § 981 *et. seq.*  All of those avenues include protections for the owner of the assets

7    to ensure that property is not taken without due process.  In this case, the Government has

8    declined to invoke any of those avenues and instead has simply seized Ellison's accounts

9    presumably based on an affidavit and warrant, without notice of any charges, and without

10   affording him any opportunity to be heard.  The cornerstone of due process is that a person's

11   liberty or property cannot be taken without notice and an opportunity to be heard.  To that end,

12   the Ninth Circuit has recognized that forfeiture, which liquidating the securities in the Schwab

13   Account would effectively constitute, is "harsh and oppressive" and "not favored by the courts,"

14   *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1069 (9th Cir. 1994) (internal

15   quotation marks and citations omitted), superseded by statute as stated in *United States v.*

16   *$80,180.00,* 303 F.3d 1182 (9th Cir. 2002).  And although courts in this Circuit "are particularly

17   wary of civil forfeiture statutes, for they impose 'quasi-criminal' penalties without affording

18   property owners all of the procedural protections afforded criminal defendants," *United States v.*

19   *Marolf,* 173 F.3d 1213, 1217 (9th Cir. 1999) (internal quotation marks and citations omitted),

20   here the Government seeks to liquidate the securities without even the minimal protections

21   afforded in those disfavored civil forfeiture statutes.

22       In light of the Government's choice of tactics, the only remedy that will afford

23   fundamental due process for Ellison is for the Court to order the forthwith unsealing of any

24   affidavit used by the Government to obtain the Schwab Warrant.  In that way Ellison will at least

25   have rudimentary notice of the charges against him and be able to test the premise for the seizure.

26   The seizure is, by definition, overbroad because it exceeds the notation on the face of the warrant

27   and presumptively exceeds assets traceable to any offense that could possibly have occurred in

28   the District of Puerto Rico.  Ellison can only conclude that whatever affidavit was used to obtain

- 3 -

DOCUMENT PREPARED ON RECYCLED PAPER

the Schwab Warrant must suffer from glaring and obvious deficiencies that can only be illuminated after he is able to view the accusations made against him.

The relief requested here is especially time sensitive and urgent.  The Government has stated an intention to liquidate Ellison's securities and is not competent to manage the assets. Every day that the securities spend outside Ellison's active management is a day that their long term value can be impaired.  In addition, Ellison requires access to his assets to pay essential bills, including child support, and may need access to his assets for his defense.

Finally, the seizures here are, at a minimum, premature and constitute an abuse of process. It is one thing for the Government to seize assets after a lengthy investigation and on the eve of an indictment to prevent dissipation of assets.  But, here, there is no threat of loss or dissipation of assets.  Ellison is a decorated war hero and the account in question contains his retirement funds. More importantly, the undersigned has confirmed that the seizures were not preceded by any subpoenas, informal information requests, or other investigative steps directed to Cobra or to him. The Government has just commenced interviewing dozens of witnesses.  On information and belief, based on information obtained from third parties, the Government is also investigating a FEMA employee in connection with the same matters.  That employee was not even suspended by her agency until well after the Schwab Warrant was executed.  All indications are that the Government has "seized first and is now asking questions."  The purpose of a seizure is to preserve spoilable assets after the Government already has a very strong basis to believe it has a case that has a criminal connection to those assets.  The purpose of a pre-proceeding seizure is not to deprive a target or potential target of all his or her assets during the pendency of an investigation.  And, it is clearly an abusive procedure if the intention is to deprive Ellison of his ability to defend himself or to apply pressure to him or any other witness to cooperate with the Government.

## II. **FACTUAL BACKGROUND**

Ellison is the former President of Cobra, a position he held for the past 29 months. Declaration of Donald Keith Ellison ("Ellison Decl."), at ¶ 1.  He has over 18 years' experience in the utility industry, having previously served as a CEO, Executive Vice President and Vice

- 4 -

President of various companies in the industry. *Id.* at ¶ 2. He is a decorated U.S. Army Ranger who served in the military on tours in Somalia, Bosnia, Afghanistan, and Iraq. *Id.* at ¶ 3. He was honorably discharged based on a medical evaluation following numerous engagements in active combat theatres. *Id.* In short, he served his country faithfully and honorably, risked his life for his country, and now carries life-long injuries incurred in his country's service. *Id.* Although every citizen is entitled to due process, Ellison has definitely earned the right to basic fairness before the Government seizes and liquidates his life savings.

No complaint or indictment exists or has been filed anywhere against Ellison or Cobra. *Id.* at ¶¶ 9-11. No subpoenas were served on Ellison or Cobra prior to the seizures relating to the seizures or as part of any investigation. *Id.* Ellison cannot know the basis for the warrant because the affidavits and any supporting documents remain sealed. *Id.* Ellison has not received formal notice of any forfeitures or forfeiture actions instituted by the Government, and federal agents have informed counsel to Ellison that they have many interviews yet to conduct. *Id.* at ¶¶ 8-10. Ellison does know that the only connection he has to Puerto Rico is through the business his former employer, Cobra, conducted starting in October 2017 and continuing until earlier this year. *Id.* at ¶ 10.

On April 26, 2019, the Government obtained a Warrant to Seize Property Subject to Forfeiture from the United States District Court for the District of Puerto Rico. *See* Leone Decl., ¶ 2, Ex. 1. The Schwab Warrant was signed by U.S. Magistrate Judge Camille L. Vélez-Rivé in the District of Puerto Rico and, on its face, authorized the seizure of "Funds" in the amount of $1,000,000 USD from the Charles Schwab & Co., Inc. account #9991-8933 in the name of Ellison located in the Northern District of California (the "Schwab Account").[3] Instead of limiting its seizure to the $1 million in funds that was authorized, however, the government instead seized Ellison's *entire* Schwab Account, which contained funds and securities, totaling $4,420,478.39. Ellison Decl., ¶ 7. The Government did not provide Ellison with notice of the

---

[3] Pursuant to Rule 41(g), the motion to return property "must be filed in the district where the property was seized." The Government executed the seizure warrant on the Schwab Account in this District in San Francisco, California. Leone Decl., ¶ 2, Ex. 1.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   seizure, which he only learned about through his financial advisor. *Id.* at ¶ 8. Ellison is now

2   unable to access or manage the account, cannot manage the securities (subjecting him to risks of

3   loss), and cannot use the funds to support his family and children, or access it for his defense. *Id.*

4   The lead prosecutor for the Government has stated an intention to liquidate the securities in the

5   Schwab Account. Leone Decl., ¶ 8.

6        The Government did not stop there. It obtained other warrants in the District of Puerto

7   Rico and made multiple seizures outside this District without notifying Ellison, including a

8   seizure of $71,551.40 from a joint account held by Ellison and his wife; a seizure of $100,306.70

9   from a JP Morgan Chase Checking Account in Ellison's name; and $276,583.84 from a JP

10  Morgan Chase Savings Account in Ellison's name. *See* Ellison Decl., ¶ 9; Leone Decl., ¶¶ 3-5,

11  Exs. 2-4. The Government also seized Ellison's boat and truck. *See* Ellison Decl., ¶ 9; Leone

12  Decl., ¶¶ 6-7, Exs. 5-6. The Government did not provide Ellison with any notice of these

13  seizures. Ellison discovered that these bank accounts had been seized when he attempted to

14  withdraw money from his bank account to make child support payments. Ellison Decl., ¶ 9. In

15  addition, agents have threatened Ellison's fiancé, now bride, with seizure of her engagement ring.

16  *Id.* at ¶ 10.

17  ### III. LEGAL STANDARD

18       Where no criminal charges are pending at the time a Rule 41(g) motion is filed, the district

19  court treats the motion as a civil complaint governed by the Federal Rules of Civil Procedure.

20  *Ibrahim*, 522 F.3d at 1007. In turn, the court should then convert any opposition to the Rule

21  41(g) Motion filed by the Government into a motion for summary judgment. *Id.* Accordingly,

22  pursuant to the Federal Rules of Civil Procedure, in opposing a Rule 41(g) Motion, the

23  Government must demonstrate that there is no "genuine issue as to any material fact," and that it

24  is "entitled to judgment as a matter of law." *Id.* If the Government is unable to meet this

25  summary judgment standard, the motion for return of property—now being treated as a civil

26  complaint—should not be dismissed at the summary judgment stage, and the court should go

27  forward with additional proceedings consistent with the Federal Rules of Civil Procedure. *Id.*

28  Here, there is no dispute of the fact that the Government has exceeded the proper scope of the

- 6 -

DOCUMENT PREPARED ON RECYCLED PAPER

1  Schwab Warrant and that the Excess Property should be immediately returned.

2  **IV.  ARGUMENT**

3  The Government's hasty and expansive seizure has forced Ellison into a problematic

4  corner of the law into which the protections typically afforded property owners do not reach.

5  Under these circumstances, it is imperative that the Court exercise its equitable jurisdiction to

6  accept this Rule 41(g) Motion as a petition for equitable relief.  The Excess Property should be

7  returned, and the Warrant Materials unsealed.

8  **A.     The Court's Exercise of its Equitable Jurisdiction is Warranted Here.**

9  Where, as here, criminal proceedings are not yet underway, a property owner's Rule 41(g)

10  Motion is treated as a petition for civil equitable relief subject to the district court's balancing of

11  four discretionary factors.  *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) ("[Rule

12  41(g) motions] are treated as civil equitable proceedings.").   According to *Ramsden*, in

13  determining whether to exercise its equitable jurisdiction, the court is to consider: (1) whether the

14  Government displayed a callous disregard for the constitutional rights of the movant; (2) whether

15  the movant has an individual interest in and need for the property he wants returned; (3) whether

16  the movant would be irreparably injured by denying return of the property; and (4) whether the

17  movant has an adequate remedy at law for the redress of his grievance.  *Id.* at 325.  No single

18  factor is determinative; if "the balance of equities tilts in favor of reaching the merits of the Rule

19  41(g) motion, the district court should exercise its equitable jurisdiction to entertain the motion."

20  *Id.* at 326.

21  Each factor militates in favor of this Court's exercise of its equitable jurisdiction.

22  **1.     The Government has displayed a callous disregard for Ellison's constitutional rights.**

23  The *Ramsden* test first asks whether the Government has displayed a callous disregard for

24  the constitutional rights of the movant.  *Ramsden*, 2 F.3d at 325.  "Callous disregard" is present

25  where the government's conduct is deliberate, or results in prejudice to the property owner.  *See,*

26  *e.g., Cox v. United States*, No. CV-07-1200-PHX-SMM, 2008 WL 477877, at *4 (D. Ariz. Feb.

27  19, 2008) (explaining that deliberate disregard of Rule 41 or prejudice to the property owner can

28  

- 7 -

DOCUMENT PREPARED
ON RECYCLED PAPER

constitute callous disregard of property owner's rights).  Courts find this element met where government agents blatantly violate a movant's rights under the Fourth Amendment in effectuating a seizure.  *See, e.g., Ramsden*, 2 F.3d at 326 (affirming district court's finding of callous disregard for property owner's rights based on Government's violation of the Fourth Amendment in executing search and seizure); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1174 (9th Cir. 2010), *abrogated on other grounds by Demaree v. Pederson*, 887 F.3d 870 (9th Cir. 2018) (affirming finding of callous disregard where government agents seized materials outside the scope of warrants).  Conversely, "callous disregard" is absent in those situations where the Government acts in good faith, including, for instance, where the Government has "sought to comply with [a] search warrant in good faith." *Matter of Search of Specialty Fulfillment Ctr.*, No. 1:17-mc-09979-CWD, 2018 WL 785861, at *4 (D. Idaho Feb. 8, 2018); *see also Zubkis v. Lange*, 966 F. Supp. 985, 987 (S.D. Cal. 1997) (finding no callous disregard because government agents' conduct in executing valid warrant did not violate plaintiff's constitutional rights).

*Comprehensive Drug Testing* is illustrative.  There, multiple district courts issued warrants in connection with the Government's investigation of steroid use by professional baseball players. 621 F.3d at 1166-1167.  The warrants were limited to the records of ten named players as to whom the Government had probable cause.  *Id.*  However, in executing the warrants, the Government obtained—and later refused to return—records for other athletes not named in the warrants.  The Government's conduct was challenged in multiple federal districts in which warrants were issued or executed, and each district court judge "expressed grave dissatisfaction with the government's handling of the investigation." *Id.* at 1167.  Specifically, two district court judges determined that the Government "utterly failed to follow [a] warrant's protocol" in seizing records for more than just those players named in the warrants.  *Id.* at 1172.  Accordingly, one district court found that the Government's seizure was "in callous disregard of the Fourth Amendment" because it "reached information clearly not covered by a warrant." *Id.* at 1170-1172.  In approving the district courts' findings, the Ninth Circuit explained that "simple common sense leads to precisely the same conclusion: [t]his was an obvious case of deliberate

- 8 -

DOCUMENT PREPARED ON RECYCLED PAPER

1    overreaching by the government in an effort to seize data as to which it lacked probable cause."

2    *Id.*    Accordingly, the Ninth Circuit upheld one district court's order which "cur[ed] this

3    overreaching by ordering the government to return the illegally seized data" under Rule 41(g). *Id.*

4        Here, the Government's seizure exceeds any reasonable authorization in at least two

5    respects. First, it has seized all of Ellison's securities, cash and personal property without regard

6    to whether the Government actually meets the requirements for seizure, i.e. it constitutes, is

7    derived from, or is traceable to proceeds of an offense. Ellison's current assets are the result of a

8    lifetime of work and thrift. His duties for his former employer involved many matters other than

9    his work in Puerto Rico. Ellison Decl., ¶¶ 4-6. The Government has overreached by seizing all

10    his liquid assets without regard to their connection to Puerto Rico. *Id.* at ¶¶ 4-11. Second, the

11    Schwab Warrant is, at best, facially limited, and at worst, fatally vague. A warrant must be

12    judged on its face. *See, e.g., United States v. Sedaghaty,* 728 F.3d 885, 912-13 (9th Cir. 2013).

13    On its face, the Schwab Warrant permits seizure of only $1 million. The Government, however,

14    improperly seized $4.5 million in securities and cash from Ellison's brokerage account. Finally,

15    the Government intentionally decided to pursue these assets without invoking any of the clear

16    statutory procedures created by Congress to effectuate Government forfeiture proceedings. The

17    Government cannot complain that its investigation will be harmed by unsealing of the warrant. It

18    chose to utilize the Schwab Warrant procedure. That is the operative document upon which the

19    seizure is based and making it available for Ellison to challenge is the only avenue by which due

20    process can be afforded. Such conduct, like that in *Comprehensive Drug Testing,* is "an obvious

21    case of deliberate overreaching by the government." 621 F.3d at 1172. For this reason, together

22    with the constitutional violations further described in Section B, *infra,* the first element of the

23    *Ramsden* test favors the Court's exercise of equitable jurisdiction.

24        **2.**    **Ellison has an individual interest in the property, and will suffer irreparable harm without its return.**

25

26        The *Ramsden* test next asks whether the movant has an "individual interest in and need for

the property," and whether he will be "irreparably injured by denying return of the property."

27    *Ramsden,* 2 F.3d at 325. These factors similarly favor the Court's exercise of jurisdiction.

28

- 9 -

DOCUMENT PREPARED ON RECYCLED PAPER

PLAINTIFF DONALD KEITH ELLISON'S NOTICE OF MOT. AND MOT. TO RETURN PROPERTY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(G); MEMO. OF POINTS & AUTHORITIES IN SUPPORT THEREOF

1   Ellison has an individual interest in the property because the property constitutes funds in his own

2   brokerage account, funds which are necessary for Ellison's support of himself and his children.

3   *See, e.g., Ramsden*, 2 F.3d at 325-26 (concluding that property owner established an individual

4   interest sufficient to satisfy the four-factor test where seized property was necessary for property

5   owner to run his business); *Account Servs. Corp. v. United States*, No. 09-CV-1495-JM (RBB),

6   2009 WL 2755649, at *3 (S.D. Cal. Aug. 27, 2009) (agreeing that account holder of seized

7   accounts has an interest in funds seized from those accounts).  All other liquid assets have been

8   seized.  Ellison Decl., ¶¶ 6-9.  The agents have even gone so far as to threaten Ellison's fiancé,

9   now bride, with seizure of her engagement ring.  *Id.* at ¶ 10.

10          Moreover, continued deprivation of his financial assets will cause Ellison irreparable

11   harm.  Most critically, Ellison relies on these funds to support his family, including through

12   fulfillment of Ellison's child support obligations.  *Id.* at ¶¶ 7-9.  The harm to Ellison, and his

13   dependents, of Ellison's inability to meet those obligations is not harm that can merely be cured

14   with a damages award.  *See Naylor v. United States*, No. 13-cv-2481-BTM, 2013 WL 6909521,

15   at *3 (S.D. Cal. Dec. 27, 2013) (finding irreparable harm sufficient to exercise equitable

16   jurisdiction over bankruptcy trustee's Rule 41(g) motion where government's continued

17   possession of seized funds prevented trustee from making distributions to its creditors); *see also*

18   *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1519 (9th Cir. 1991) ("[W]henever the

19   Government seizes a significant amount of money and withholds it for an unreasonable length of

20   time without bringing charges and without offering evidence to justify its continued withholding

21   and without any indication as to when if ever charges will be filed, the claimant suffers

22   irreparable harm.") (internal quotations and citations omitted);

23          **3.      Ellison lacks an adequate remedy at law.**

24          Rule 41(g) is the *sole* remedy at law for property owners who find themselves in the rare

25   predicament that Ellison now faces: namely, where the Government seizes property that is

26   ineligible for administrative or "nonjudicial" forfeiture, but has neither filed an indictment

27   initiating criminal judicial forfeiture proceedings, nor filed a civil judicial forfeiture action.

28          A discussion of forfeiture law illustrates why it is critical that the Court hear Ellison's

- 10 -

DOCUMENT PREPARED ON RECYCLED PAPER

Motion. The Government chose to utilize the most aggressive, and most unfair, form of seizure that remains in existence following adoption of the Civil Asset Forfeiture Reform Act ("CAFRA"). There are three forms of forfeiture proceedings available when property is seized by the federal government: civil judicial forfeiture, criminal forfeiture, and "administrative" or "nonjudicial" forfeiture. In each instance, controlling statutes impose procedural requirements on the Government, including deadlines and notice requirements. *See, e.g.*, 18 U.S.C. § 983; 21 U.S.C. § 853; 28 U.S.C. § 2461. But, the Government has side-stepped these protections in this case. None of these statutory protections apply to this situation. First, while 18 U.S.C. § 981 and the Supplemental Rules of Civil Procedure C, E, and G apply to civil judicial forfeiture actions, the Government has not initiated any such proceeding. Nor do criminal forfeiture rules provide guidance where, as here, the Government has neither obtained an indictment including a forfeiture charge, nor a conviction of an offense giving rise to any forfeiture. *See* 28 U.S.C. § 2461; 21 U.S.C. § 853. Recognizing the inherent dangers in permitting the Government to seize property indefinitely without initiating judicial forfeiture proceedings, Congress enacted CAFRA in 2000 (codified at 18 U.S.C. § 983(a)(1)). *See United States v. $20,000 in U.S. Currency*, No. 18cv1779-L-BLM, 2019 WL 1793359, at *2 (S.D. Cal. Apr. 24, 2019) (explaining that CAFRA "was enacted, in part, to curb what Congress perceived as abuses of the existing civil forfeiture system" because "prior to CAFRA, . . . there was no general-purpose statutory requirement that the government commence a civil forfeiture action—either administrative or judicial—within any specific period of time following the seizure of property") (citations omitted).

Importantly, CAFRA imposes specific procedural requirements and timelines, such that the Government is bound to initiate nonjudicial or judicial forfeiture proceedings upon the occurrence of specified events. *See, e.g.*, 18 U.S.C. § 983(a)(1)(A), (a)(2)(A), (a)(3)(A). However, nonjudicial forfeiture derives from the admiralty rules, and, accordingly, only the forms of property listed in 19 U.S.C. § 1607 are eligible for the protections afforded by CAFRA. *See Omidi v. United States*, 851 F.3d 859, 861-62 (9th Cir. 2017) (explaining that, pursuant to 19 U.S.C. § 1607, "[c]ertain types of property are not eligible for nonjudicial forfeiture proceedings; they may be forfeited only through proceedings in court"); *In re Funds on Deposit*, 919 F. Supp.

- 11 -

DOCUMENT PREPARED ON RECYCLED PAPER

2d 169, 173-175 (D. Mass. 2012) (concluding that the "Government [wa]s prohibited from pursing administrative forfeiture under 19 U.S.C. § 1607(a)(1)" because the property seized did not fit the parameters of that statute).  Among the forms of property ineligible for administrative forfeiture is personal property—which includes the funds in a financial institution account—valued in excess of $500,000.00. *See Omidi*, 851 F.3d at 861-62 (concluding that approximately $100 million in funds seized from bank accounts was not eligible for administrative forfeiture); *Funds on Deposit*, 919 F. Supp. 2d. at 173-175 (concluding Government was prohibited from pursuing administrative forfeiture where funds seized exceeded $500,000.00 in value); *DWB Holdings v. United States*, 593 F. Supp. 2d 1271, 1272 (M.D. Fla. 2009) ("[B]ecause the amount seized exceeds $500,000.00, the Drug Enforcement Administration ('DEA') cannot initiate administrative proceedings against the funds[.]").

As such, in seizing funds from the Schwab Account in an amount exceeding $500,000.00, the Government guaranteed that the property would not be eligible for the protections of CAFRA.  *Celata v. United States*, 334 F. App'x 801, 802 (9th Cir. 2009) ("By its terms, 18 U.S.C. § 983 applies only to 'property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute'").  As federal courts across the country have recognized, the gray area in which the Government is currently operating—likely an oversight by Congress, and not its intent—poses serious constitutional issues. *See, e.g., Camacho v. United States*, No. 12–cv–956–CAB (BGS), 2013 WL 12072522, at *7 (S.D. Cal. Dec. 18, 2013) ("The government's position [that the provisions of § 983 did not apply because it never intended to seek administrative forfeiture] exposes a deficiency in CAFRA.  The statute lacks any provision governing when the seizing agency must send notice to an interested party if the agency does not intend to seek administrative forfeiture. This deficiency is vulnerable to abuse[.]"); *United States v. $20,000 in U.S. Currency*, No. 18cv1779-L-BLM, 2019 WL 1793359, at *2 (S.D. Cal. Apr. 24, 2019) ("It would appear, therefore that in drafting CAFRA as it did, Congress mistakenly did not consider that not all forfeiture cases begin as administrative forfeitures. . . . This deficiency is vulnerable to the very abuse CAFRA was intended to curb.") (quotations omitted); *Funds on Deposit*, 919 F. Supp. 2d at 177 ("[T]he Government's reading of 18 U.S.C. § 983(a)(1)(A)(i) seemingly creates a

- 12 -

hole inconsistent with the apparent purpose of CAFRA, namely, to provide timely notice of forfeiture no matter what the mechanism, [but] the remedy is a legislative amendment, not judicial fiat."). Accordingly, Rule 41(g) is not merely a crucial constitutional check on the Government's seizure of personal property valued over $500,000.00—it is the property owner's exclusive remedy at law in the face of this otherwise unrestrained action. *Celata*, 334 F. App'x at 802 ("The only procedurally proper way to seek the return of property seized under the circumstances of this appeal [*i.e.*, where CAFRA did not apply] would be to file a motion pursuant to Fed. R. Crim. P. 41(g)."); *Omidi*, 851 F.3d at 862-63 ("Owners of personal property worth more than $500,000 are not left without recourse to the courts when the government seizes their property and delays initiating judicial forfeiture proceedings . . . . They can file a motion in the district court seeking return of their property under Federal Rule of Criminal Procedure 41(g) . . . . Even when criminal proceedings are not yet underway, as was true here, an aggrieved property owner may invoke Rule 41(g) as a means of obtaining judicial review.); *see also, e.g.*, *United States v. Hurtado*, No. 09-4206 SVW (EX), 2009 WL 10671968, at *8 (C.D. Cal. Oct. 7, 2009) ("[W]here the seizing party d[oes] not initiate forfeiture proceedings with regard to the property, federal courts generally hold that the Rule 41(g) movant does not have an adequate remedy at law.") (collecting cases).

Given the dearth of relief available to Ellison, this factor overwhelmingly favors the court's exercise of jurisdiction.

**B.   Under Rule 41(g), Ellison is entitled to the return of his property.**

Federal Rule of Criminal Procedure 41(g) states that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." To prevail on a Rule 41(g) motion, the moving party must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended. *See United States v. Harrell*, 530 F.3d 1051, 1057 (9th Cir. 2008).

Here, the first two elements of the Rule 41(g) test are easily met. First, Ellison is entitled to lawful possession of the money in the Schwab Account in excess of the $1 million authorized

- 13 -

for seizure in the Schwab Warrant.   Second, the money in Ellison's Schwab Account is not contraband.  *See Harrell*, 530 F.3d at 1057 (stating that an object is contraband per se if its possession, without more, constitutes a crime; or in other words, if there is no legal purpose to which the object could be put).  Most critical, however, is the final element: in numerous respects, as detailed below, the Government's seizure is illegal.

> ### 1.   Because the seizure exceeds the scope of the warrant, it violates the Fourth Amendment.

As the Supreme Court instructs, "[b]ecause indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment," that Amendment requires that the scope of every authorized search be particularly described."  *Walter v. United States*, 447 U.S. 649, 657 (1980) (internal quotation marks and citations omitted).   To that end, the Fourth Amendment requires that a warrant "particularly describe both the place to be searched and the person or things to be seized."  *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986); *see also United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982) ("As a general rule, in searches made pursuant to warrants only the specifically enumerated items may be seized.").

The language of the warrant controls the scope of the seizure.  *Sedaghaty*, 728 F.3d at 912-13; *see also United States v. Ewain*, 88 F.3d 689, 693 (9th Cir. 1996) ("The Constitution does not permit use of a properly limited warrant as a pretext for a general search, or for a search outside the scope of the warrant.").   Where the plain text of the warrant clearly delineates what is to be seized, seizure of property beyond those limitations violates the Fourth Amendment.  *See Sedaghaty*, 728 F.3d at 915 ("The government's seizure of items beyond the terms of the warrant violated the Fourth Amendment."); *Estate of Brown by Brown v. Lambert*, No. 15-cv-1583-DMS (WVG), 2017 WL 2812618, at *10-13 (S.D. Cal. June 27, 2017) (granting summary judgment in plaintiff's favor on plaintiff's Fourth Amendment claim based on the court's conclusion that "the seizure of the property . . . went beyond the scope of the warrant, and was therefore unreasonable and a violation of Plaintiffs' Fourth Amendment rights."); *United States v. Wetselaar*, No. 2:11-CR-00347-KJD, 2013 WL 8206582, at *6 (D. Nev. Dec. 31, 2013) ("[T]he Fourth Amendment is

- 14 -

1    violated by a governmental seizure of items beyond the terms of the warrant."); *United States v.*

2    *Heldt*, 668 F.2d 1238, 1266 (D.C. Cir. 1981) ("[T]he particularity requirement of the fourth

3    amendment prevents the seizure of one thing under a warrant describing another. As to what is to

4    be taken, nothing is left to the discretion of the officer executing the warrant.") (citations

5    omitted). Stated differently, "[a] warrant cannot pass constitutional muster if the scope of the

6    related search or seizure exceeds that permitted by the terms of the validly issued warrant." *Pac.*

7    *Marine Ctr., Inc. v. Silva*, 809 F. Supp. 2d 1266, 1280 (E.D. Cal. 2011) (citing *Al-Kidd v.*

8    *Ashcroft*, 598 F.3d 1129, 1134 n.3 (9th Cir. 2010), *cert. denied*, 562 U.S. 980 (2010)).

9    Accordingly, "[i]f the scope of the search exceeds that permitted by the terms of a validly issued

10    warrant or the character of the relevant exception from the warrant requirement, the subsequent

11    seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990).

12        In conjunction, Rule 41(g) and the Fourth Amendment mandate that where the

13    government seizes property in excess of that identified in a seizure warrant, the excess property

14    be returned. *See, e.g., Comprehensive Drug Testing*, 621 F.3d at 1169-1174 (affirming Rule

15    41(g) order requiring government to return materials seized where those materials exceeded the

16    scope of warrant); *Matter of 636 S. 66th Terrace, Kansas City, Kan.*, 835 F. Supp. 1304, 1306 (D.

17    Kan. 1993) (ordering return of all property seized under a warrant after adopting magistrate's

18    findings of fact indicating that "the seizure in question grossly exceeded the scope of the search

19    warrant"); *Watts v. Kroczynski*, 636 F. Supp. 792, 801-802 (W.D. La. 1986) (granting Rule 41

20    Motion for Return of Property as to all property seized that was not within the scope of the

21    warrants and thus seized in violation of the Fourth Amendment). Again, *Comprehensive Drug*

22    *Testing* is illustrative. There, in affirming the district court's order requiring the government to

23    return seized property pursuant to Rule 41(g), the Ninth Circuit observed that the Government

24    seized materials in excess of those explicitly identified in the warrants there at issue. 621 F.3d at

25    1166-67. The court reasoned that when the government obtains property "by circumventing or

26    willfully disregarding limitations in a [] warrant, it must not be allowed to benefit from its own

27    wrongdoing by retaining the wrongfully obtained [property]." *Id.* at 1174. As the court went on,

28    "[w]hen the district court determines that the government has obtained the evidence through

- 15 -

DOCUMENT PREPARED ON RECYCLED PAPER

1    intentional wrongdoing . . . it should order return of the property without [any] need for balancing

2    that is applicable in the more ordinary case." *Id.*

3         With the Schwab Warrant so explicitly limited to $1 million in funds, the Government's

4    seizure of nearly $4.5 million in cash *and* securities is nothing if not intentional disregard of the

5    warrant's limitations.    It does not save the Schwab Warrant to refer to the typed portion of the

6    Schwab Warrant that authorizes seizure of the account.    At best, the discrepancy between the

7    handwritten notation on the Schwab Warrant and the typed information renders the Schwab

8    Warrant vague and defective on its face.    The Schwab Warrant must specifically describe the

9    property to be seized.    In addition, because the Schwab Warrant only authorizes the seizure of

10   "Funds," all securities seized are beyond the Schwab Warrant's scope and should be returned to

11   Ellison.  The excess funds seized in the amount greater than $1 million should also be returned.

12       **2.**    **Because there is no connection between the seized property and any criminal activity, the seizure violates Ellison's constitutional rights.**

13        The Government seized Ellison's property pursuant to a Form AO 109 Warrant to Seize

14   Property Subject to Forfeiture.    Though, as described above, the Government has yet to initiate

15   any proceeding to forfeit Ellison's property, any theory pursuant to which the Government *does*

16   ultimately pursue forfeiture requires that the Government have probable cause to believe that the

17   seized property is subject to forfeiture.  *See, e.g.*, 18 U.S.C. §§ 981, 982; 21 U.S.C. § 853(f); 28

18   U.S.C. § 2461(c).    Indeed, the strictures of the Fourth and Fifth Amendments demand that

19   probable cause support each warrant for the seizure of property.  *See, e.g.*, U.S. Const. amend. IV

20   ("[N]o [w]arrants shall issue, but upon probable case, supported by [o]ath or affirmation . . .");

21   U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty, or property, without due

22   process of law...").    To demonstrate probable cause, the government must establish a nexus

23   between the property and the illegal activity.  *See United States v. $493,850.00 in U.S. Currency*,

24   518 F.3d 1159, 1166 (9th Cir. 2008) ("Probable cause to believe that the property is involved in

25   some illegal activity is not enough—the government must have probable cause to believe that the

26   property is involved in the activity subject to the specific forfeiture statute it invokes . . . .").

27        Here, the Government has refused to provide the Warrant Materials, and Ellison has

28

1   received no information about the Government's motivations or intentions in depriving him of his

2   property.   Ellison Decl., ¶¶ 7-11.   The secondhand information that Ellison has received,

3   however, indicates that the Government's conduct is driven by Ellison's employment with Cobra,

4   and, in turn, Cobra's entrance into various contracts with the Puerto Rico Electric Power

5   Authority ("PREPA").   Importantly, however, Cobra did not enter into any relationship with

6   PREPA until October 2017. *Id.* at ¶¶ 5, 10. And yet, Ellison owned much of the property seized

7   from the Schwab Account prior to October 2017. *Id.* at ¶¶ 4-7. Accordingly, the Government

8   unequivocally cannot establish the requisite connection between this property and any alleged

9   wrongdoing, and a finding of probable cause that the pre-October 2017 funds and stocks is

10   subject to forfeiture is precluded. *See, e.g.,* 18 U.S.C. § 981(a)(1)(C) (authorizing forfeiture only

11   for property that "constitutes or is derived from proceeds traceable to" specified criminal

12   violations).  This property must be returned. *United States v. Gregoire*, 638 F.3d 962, 972 (8th

13   Cir. 2011) (ordering return of property where portion of forfeiture judgment amount could not be

14   "proceeds" because "the seized property was not sold, so it generated no proceeds"); *United*

15   *States v. One 1974 Learjet 24D, Serial Number 24D-290, Mexican Registration XA-RMF*, 191

16   F.3d 668, 673 (6th Cir. 1999) (explaining that lack of probable cause to seize property warrants

17   return of property to its owner); *United States v. Mann*, 140 F. Supp. 3d 513, 524-25 (E.D.N.C.

18   2015) (concluding that, where neither affiant-agent nor the government had reason to believe that

19   bank accounts subject of seizure warrant contained directly traceable proceeds from alleged

20   criminal activity, there was no probable cause sufficient to support seizure warrant).[4]

21       **3.**   **Maintaining the Warrant Materials under seal further infringes Ellison's**
           **constitutional rights.**

22

23       The seizure is illegal for a separate and final reason: in seizing substantially all of

24

---

25  [4] That the Government has refused to initiate judicial forfeiture proceedings, but has deliberately
     seized property ineligible for nonjudicial forfeiture proceedings, only heightens the probable

26  cause and due process concerns implicated by this case. *Cf. In re the Premises Known and
     Described as 100 Sweeneydale Ave., Bayshore, N.Y.*, No. 14-MC-1179 (ADS), 2015 WL

27  3607572, at *11 (E.D.N.Y. June 6, 2015) (denying petitioners' request for probable cause hearing
     because civil forfeiture proceedings under CAFRA provide "ample opportunity" to challenge

28  government seizure).

DOCUMENT PREPARED
ON RECYCLED PAPER

1  Ellison's assets, without instituting forfeiture proceedings but while insisting on maintaining the

2  Warrant Materials under seal, the Government has effectively deprived Ellison of any meaningful

3  opportunity to challenge the validity of the underlying warrant. The Government cannot be

4  rewarded for such gamesmanship.

5  Indeed, as the courts of this Circuit have recognized, "there exists a private right of access

6  under the Fourth Amendment to the affidavit in support of the search warrant during the pre-

7  indictment stage, which vests in the individual or entity whose property was seized." *Societe*

8  *d'Equipments Internationaux Nigeria, Ltd. v. Dolarian Capital, Inc.*, No. 1:15-cv-01553-DAD-

9  SKO, 2016 WL 4191887, at *1 (E.D. Cal. August 8, 2016);  *In re Searches and Seizures*, Nos.

10  08-SW-0361 DAD, 08-SW-0362 DAD, 08-SW-0363 DAD, 08-SW-0364 DAD, 2008 WL

11  5411772, at *3 (E.D. Cal. Dec. 19, 2008) ("[S]everal courts," including within this Circuit, "have

12  recognized that those individuals whose property is the subject of a search pursuant to warrant

13  have a pre-indictment right of access to search warrant materials, including the supporting

14  affidavit, grounded in the Fourth Amendment."). Courts throughout the country concur. *In re*

15  *Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 591 (D. Md. 2004) (recognizing

16  "a search subject's pre-indictment Fourth Amendment right to inspect the probable cause

17  affidavit"); *In re Search of Up North Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996)

18  (denying government's pre-indictment motion to keep in place a previously entered order sealing

19  the affidavit in support of a search warrant); *In re Search Warrants Issued August 29, 1994*, 889

20  F. Supp. 296, 299 (S.D. Ohio 1995) (granting a home and business owner's pre-indictment

21  motion to unseal search warrant materials, stating "the Fourth Amendment right to be free of

22  unreasonable searches and seizures includes the right to examine the affidavit that supports a

23  warrant after the search has been conducted and a return has been filed"); *see also In the Matter*

24  *of Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) (observing in

25  response to a motion to unseal a warrant affidavit brought by a business that had been subject to

26  search that such materials may not be sealed indefinitely pending the government's decision to

27  seek an indictment).

28  Although not an absolute right to access, denial is warranted only "where a compelling

- 18 -

DOCUMENT PREPARED ON RECYCLED PAPER

governmental interest is demonstrated requiring that the materials be kept under seal." *Societe d'Equipments*, 2016 WL 4191887, at \*4. "In this regard, it has generally been recognized that in order to prevent the search subject from inspecting the contents of the supporting affidavit, the government must demonstrate to the court that a compelling government interest requires the materials to be kept under seal and that there is no less restrictive means, such as redaction, capable of serving that interest." *Id.* Here there is no reason to keep the Warrant Materials sealed. The property has been seized. There is no possibility of it being hidden or moved beyond the jurisdiction of the Court. The Government has no compelling governmental interest to block Ellison, who is not indicted and not the subject of any Government action, from accessing and challenging the Government's pre-indictment, pre-complaint affidavits that provided the basis to seize millions of dollars (and much of it in violation of the express terms of the Schwab Warrant).

Access to the affidavits and applications supporting a seizure warrant is pivotal to a property owner's exercise of its due process rights to challenge the Government's conduct and the probable cause underlying the warrant. *See, e.g., United States v. Moya–Gomez*, 860 F.2d 706, 729–30 (7th Cir. 1988) ("[A]llowing no opportunity to place in question the government's allegation that certain property is subject to forfeiture—violates the due process clause[.]"); *United States v. Contents of Accounts*, No. 3:10-CV-228-H, 2010 WL 2556849, at \*1 (W.D. Ky. June 18, 2010) (acknowledging that the court was "troubled by the government's use of sealed affidavits to . . . freeze substantially all of Defendants' personal assets without notice or a hearing, thus creating and prolonging a potentially irreparable harm with limited opportunity for a meaningful remedy").

For instance, in *United States v. Mann*, a property owner argued—and the district court agreed—that the Government's excessive seizure of funds was illegal because the Government's agent knowingly misstated facts to the warrant-issuing judge in the affidavit submitted in support of the seizure warrant. 140 F. Supp. 3d 513, 524-25 (E.D.N.C. 2015). The court further found that no evidence supported the notion that the bank accounts contained money directly traceable to any alleged unlawful conduct. *Id.* Thus, by accessing the supporting affidavit, the property owner was able to challenge the truth of the affiant's statements, forcing the Government to admit

- 19 -

DOCUMENT PREPARED ON RECYCLED PAPER

to falsities made in its pursuit of the underlying warrant. With that, the district court was able to determine "that the seizure warrants issued in direct reliance upon [the agent's affidavit] were invalid and that the government wrongfully seized [the property owner's] bank accounts," and ordered the return of certain seized property. *Id.* Conversely, here, though not a single criminal charge has been levied against him, Ellison is completely in the dark as to the allegations supporting the drastic decision to divest him of substantially all of his assets. Ellison Decl., ¶¶ 8-10. Like the property owner in *Mann*, Ellison has reason to believe that no evidence could possibly establish the probable cause necessary to support the warrants obtained by the Government, and that, in all likelihood, the warrants were issued in reliance on mistakes or misrepresentations. He must be permitted to mount this challenge.

Finally, access to the affidavit serves the interests of justice. The Government has seized assets before completing any substantial investigation. Its operating theory, gleaned solely from second hand reports of the questions its agents began asking *after the seizure,* seems to be that Ellison had an improper relationship with a FEMA employee who is currently under suspension by her agency. Therefore, the inquiry by definition must focus on what this employee received and what she did. However, Ellison had no contractual relationship with FEMA. Ellison's former employer, Cobra, had no contractual relationship with FEMA. Ellison Decl., ¶ 5. Cobra had contracts to perform electrical grid restoration in Puerto Rico. *Id.* It completed over $1 billion worth of reconstruction, has been audited and received praise for its work. *Id.* Assuming for the sake of argument that Ellison formed a close friendship with a FEMA employee who lacked any authority over Cobra's selection, who lacked authority to authorize payments to Cobra, and who lacked any form of contractual privity with Cobra, it is questionable as to what, if any, theory is available to the government. Among other purported interactions, agents have asked witnesses about a helicopter trip in which this employee was taken to a Cobra medical facility for a serious medical condition. *See, e.g., id.* at ¶ 10. The employee reimbursed Cobra for the costs of transportation and the associated treatment. *Id.* The Government, of course, has not bothered to subpoena such records or pursue an investigation of this incident from the company prior to the seizures of Ellison's assets. *Id.* at ¶¶ 8-11. Rather, it has asked accusatory

- 20 -

questions of witnesses about the event as though a judgment has already been formed that it must be evidence of an improper relationship. *Id.* at ¶ 10. Perhaps the Government affidavit relies for its claim on a "confidential informant." However, establishing that the "confidential informant" has submitted false information about an important event could lead the court to question the entire affidavit and see the seizure in a different light. Other examples could be cited. But, without knowing anything about what information the Government provided to the magistrate in Puerto Rico, speculation would not productive.

The value of the adversary system of justice is that it imposes rigor on the parties to verify and prove their claims against confrontation. The search warrant process lacks any such guarantee of reliability. The Government seeks its warrant with only one side of the story. The court relies on the Government lawyers to have conducted a careful and thorough investigation of the facts *before* it invokes the compulsory power of the court, not after. In the ordinary case, the warrant is simply the beginning of a process of gathering evidence. Here, the warrant process has been used to seize assets as though the government has already proven a difficult case and obtained a verdict. To compound the potential for error, the government's investigation is far from complete. But, the consequences of the Schwab Warrant may be indelible. The Court's and the Government's *legitimate* interests, as well as Ellison's, will be served by providing the affidavit to enable the parties to get at the truth.

Here, it is not asking too much to require the Government to produce its support for its extremely broad, and extremely aggressive wholesale seizure of assets, pre-investigation, pre-indictment, and pre-suit.

## V. **PRAYER FOR RELIEF**

For the reasons set forth above, Donald Keith Ellison respectfully prays that the Court order the return of all securities seized from the Schwab Account and all funds seized from the Schwab Account in excess of the $1 million in funds expressly authorized by the Schwab Warrant. Ellison also seeks the production of any affidavits and other supporting documentation that the Government submitted as part of its application for the Schwab Warrant. Because this Motion rests in equity, Ellison also seeks all other relief that the Court deems him justly entitled.

- 21 -

Document Prepared on Recycled Paper

1  Dated: June 12, 2019

2                                    **NORTON ROSE FULBRIGHT US LLP**
                                     ROBIN D. BALL
3                                    WILLIAM J. LEONE
                                     SETH M. KRUGLAK
4

5

6  By _____
                                     ROBIN D. BALL
7                                    Attorneys for Plaintiff
                                     Donald Keith Ellison
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER